THE STATE OF NEBRASKA, EX REL.  GUY A. BROWN, V.
JOHN WALLICHS, AUDITOR OF PUBLIC ACCOUNTS.

Compiled Statutes: STATUTES CONSTRUED.  In sec. 2 of the act
providing for a compilation of the statutes of this state, approved
February 26th, 1881, is a provision: "That the said Guy A.
Brown" (the compiler), "shall furnish to the state of Nebraska,
all copies of said statutes which may be required by the state at
a price not to exceed two dollars and fifty cents per copy.  *  *
*  *  Said statutes to be published on or before July 1st, 1881."
Afterwards, in the general appropriation act of the same session,
in designating one of the objects provided for, this language was
used, viz: "For the purchase of 3,500 copies of the statutes pub-
lished under the provisions of an act to provide for the publica-
tion of a compilation of the statutes, the same to be distributed
by the secretary of state to the same officers that the general
statutes of 1873 were distributed, $8,750.00."  *Held,* that under
these provisions the compiler was authorized to deliver at once,
and demand payment for 3,500 copies, without reference to
whether that many were required by the present necessities of
the state or not;  the last of the above provisions containing a
legislative designation of the number to be furnished.

ORIGINAL application for mandamus.

*O. P. Mason,* for the relator.

*C. J. Dilworth, Attorney General,* for the respondent.

LAKE, J.

This is an application for a peremptory writ of manda-
mus to compel the respondent to draw his warrant upon
the state treasurer for the sum of $3,567.50, in favor of the
relator, in payment of a balance claimed to be due to him
from the state, for three thousand five hundred copies of
compiled statutes furnished, as is alleged, in pursuance
of legislative authority.

The only matter in controversy between the relator and
respondent is the number of copies which the state is
required to take and pay for.  The ground taken by the
latter is, that the state is liable for only such number as
were necessary for supplying at the present time each

officer entitled thereto, at the public expense, with a copy.

In sec. 2 of the act providing for the publication of a compilation of the statutes of this state, approved February 26th, 1881, it is provided: "That the said Guy A. Brown shall furnish to the state of Nebraska all copies of said statutes which may be required by the state, at a price not to exceed two dollars and fifty cents per copy. * * * * said statutes to be published on or before July 1st, 1881." Laws 1881, Chap. 80. Had this matter been left thus by the legislature, there would have been some strength in the respondent's position, that the state had assumed to take and pay for only the number actually needed at the time. But we find that, at the same session, the legislature, in the general appropriation act, made provision for meeting the expense of these statutes, using this language: "For the purchase of 3,500 copies of the statutes published under the provisions of an act to provide for a publication of a compilation of the statutes, the same to be distributed by the secretary of state to the same officers as the general statutes of 1873 were distributed, $8,750.00." Laws 1881, p. 88.

In order to arrive at the true intent of the legislature respecting this matter, these two provisions must be taken together. In the first place, it is not reasonable to presume that the legislature could have intended to bind the relator to furnish only the exact number necessary for a present supply to the several officers entitled thereto. The state is growing; new counties and precincts are being organized; the number of officers, of the classes to which the laws are supplied, is constantly increasing, thus inducing a certainly continuing demand for additional copies. Nor would it be reasonable to infer that the intent was to require the compiler, after fully supplying the first demand, to stand ready to meet all future

calls, however uncertain, for such additional copies as the state might possibly need.

According to our understanding of the provisions above quoted, the only rational conclusion to be drawn from them is, that the legislature, exercising an undoubted inherent discretion, intended to supply the state with a definite number of copies, to be paid for at once upon delivery, and sufficient to meet not only the present, but also the future demands for a reasonable length of time. And the designation of this number was not left in doubt, to be determined by the uncertain discretion of the respondent, or any other state officer, but is expressed clearly enough, as we think, in the last of the above quotations. Whether this number were reasonable, or prodigal, under all the circumstances that should affect it, is not to be here considered. The legislature saw fit to designate the number "required by the state," and that designation is not subject to review. That is a matter with which neither the respondent nor this court has anything whatever to do. We are to administer the laws as enacted, in accordance with their evident design, leaving the responsibility with the legislature where it rightly belongs. The writ must be awarded as prayed, at the cost of the respondent.

WRIT ALLOWED.